UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ADEBANJO A. ADEGBITE, A37-552-467,

                Petitioner,

      -v-                                    12-CV-1171-JTC

ERIC H. HOLDER, JR., Attorney General
TODD TRYON, Asst. Field Office Director
IMMIGRATION AND CUSTOMS
ENFORCEMENT,

                Respondents.

_____


## INTRODUCTION

Petitioner Adebanjo A. Adegbite, an alien under a final order of removal from the United States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending the execution of a final immigration order of removal issued against him. Item 1. As directed by this court's order entered (Item 2), respondent[1] has submitted an answer and return (Item 4), along with an accompanying memorandum of law (Item 5), in opposition to the petition.

For the reasons that follow, the petition is denied.

_____

[1]The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Petitioner, a native and citizen of Nigeria, was admitted to the United States on August 21, 1982, as a lawful permanent resident. *See* Item 4-1 (Declaration of DHS Deportation Officer Juanita Payan), ¶ 5; Item 4-2 (Exh. A to Payan Decl.), p. 20. DHS records reflect that petitioner was convicted of the following criminal offenses while present in the United States:

a. On or about September 16, 1992, petitioner was convicted in the Superior Court, Providence, Rhode Island, of fraudulent use of a credit card, in violation of Section 11-94-4 of the General Laws of Rhode Island.

b. On or about July 14, 1993, petitioner was convicted in the United States District Court for the Eastern District of New York, on a plea of guilty to a charge of using an unauthorized access device (*i.e.*, a credit card), in violation 18 U.S.C. § 1029(a)(2). He was sentenced to a 4 month term of incarceration followed by a 4 month period of house arrest and 2 years supervised release.

c. On or about June 3, 2010, petitioner was convicted in New York State Supreme Court, Queens County, of Enterprise Corruption, in violation of N.Y. Penal Law § 460.20. He was sentenced to a term of incarceration of 18 months to 54 months.

Item 4-1, ¶ 6; Item 4-2, pp. 20, 35-43.

Petitioner's immigration removal proceedings commenced in December 1993 by service of an Order to Show Cause charging him with being removable from the United

States, pursuant to § 241(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA"), as an alien convicted of two crimes involving moral turpitude not arising from a single scheme of criminal misconduct. Item 4-2, at 20, 24. In 1997, petitioner was served with an additional charge of deportability, which charged him with being deportable as an alien convicted of an aggravated felony pursuant to INA § 241(a)(2)(A)(iii).[2] *Id.* at 41.

On September 9, 1997, an Immigration Judge ("IJ") ordered petitioner deported to Nigeria. *Id.* at 19. Petitioner submitted an appeal to the Board of Immigration Appeals ("BIA"), accompanied by an application for waiver of inadmissibility pursuant to INA § 212(c). On November 30, 2001, the BIA remanded petitioner's case to an immigration judge for a hearing on the application for waiver of inadmissibility. *Id.* at 17.

On October 11, 2005, IJ Gabriel Videla issued a summary order denying petitioner's § 212(c) application, and once again ordering petitioner deported to Nigeria. *Id.* at 16. This order became the final order of removal when, on May 11, 2007, the BIA dismissed petitioner's appeal from IJ Videla's order. *Id.* at 14-15. On June 11, 2007, petitioner filed a motion to reopen and reconsider, and the BIA denied the motion by written decision dated September 7, 2007. *Id.* at 11-13.

As indicated above, in June 2010, petitioner was convicted in Queens County Court of Enterprise Corruption in violation of N.Y. Penal Law § 460.20, and was sentenced to a period of 18-54 months incarceration in the custody of the New York Department of Correctional Services ("DOCS," reorganized in 2011 and renamed the Department of

---

[2]The INA has been amended since the deportation charges against petitioner were lodged and determined, and the codified sections of the INA have been renumbered. Provisions of former INA § 241(a) (8 U.S.C. § 1251(a) (1993)), relating to crimes of moral turpitude and aggravated felony convictions, which formed the basis of the deportation charges against petitioner in 1993 and 1997, are now found at INA § 237(a) (8 U.S.C. § 1227(a)).

Corrections and Community Supervision ("DOCCS")). *See* Item 4-1, ¶ 6(c). On October 29, 2010, petitioner was encountered by DHS officers at the Ulster Correctional Facility in Napanoch, New York, and upon verification of his immigration status, an immigration detainer was lodged against him at the correctional facility. *See* Item 4-2 at pp. 25-26.

On May 9, 2012, upon his release from DOCCS' custody, petitioner was received into DHS custody and taken to the Buffalo Federal Detention Center in Batavia, New York. *Id.* at 28. According to DHS records, on March 19, 2012, DHS sent a presentation packet to the Consulate General of Nigeria (the "Consulate") in New York City requesting that a travel document be issued for petitioner. *Id.* at  27. On May 23, 2012, DHS served petitioner with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that petitioner was required to complete within 30 days to assist in obtaining a travel document for his removal from the United States. *Id.* at 5-6. The warning form advised petitioner, among other things, of criminal penalties under the INA for conniving or conspiring to prevent or hamper his departure from the United States, and also advised him that failure to comply, or to provide sufficient evidence of his inability to comply, may result in the extension of the removal period and subject him to further detention. *Id.*

Also in May, 2012, petitioner filed an Application for a Certificate of Citizenship (Form N-600) with the United States Citizenship and Immigration Services ("USCIS"). This application was denied on June 25, 2012. *See* Item 4-1, ¶ 17. Petitioner appealed the denial to the USCIS Administrative Appeals Office, which denied his appeal by written decision dated October 1, 2012. Item 4-2, pp. 7-10.

In accordance with immigration regulations, DHS conducted a 90-day custody status in August 2012, and notified petitioner on August 2, 2012, that his detention would be continued. *Id.* at 4, 28; Item 4-1, ¶ 18.

On August 3, 2012, petitioner filed an action in the United States District Court for the Eastern District of New York pursuant to the All Writs Act, 28 U.S.C. § 1651(a), seeking a writ of *coram nobis* vacating his 1993 conviction and sentence. *Id.* at 32-33 (Docket Sheet, *Adegbite v. United States*, No. 1:12cv3954 (E.D.N.Y.)). This action remains pending. *Id.*

On November 1, DHS Headquarters Custody Management Unit ("HQCMU") convened a panel at the Buffalo Federal Detention Facility to conduct a further review of petitioner's custody status, including an in-person interview. Following completion of the file review and interview, petitioner was notified on December 4, 2012 that DHS had determined to continue his detention in DHS custody. *Id.* at 2-3.

DHS records also show that between June and December, 2012, DHS was in regular contact with the Nigerian Consulate regarding the status of the request for a travel document for petitioner. Item 4-1, ¶ 20. On December 26, 2012, a representative of the Consulate reported that Nigeria would not issue a travel document for petitioner while his federal court habeas corpus and *coram nobis* petitions remained pending in the federal courts. *Id.*

Meanwhile, petitioner filed this action on November 26, 2012, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in post-removal-order custody is unlawful since it has exceeded the presumptively reasonable

six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal).

Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings, and pending removal following the entry of a final order of removal, are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order. In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a), which requires the Attorney General to accomplish an alien's removal from the United States within a period of ninety days (the "removal period"), commencing on the latest of the following dates:

(i)  The date the order of removal becomes administratively final.

(ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory.  *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien.").  The statute also authorizes the Attorney General to continue detention beyond the expiration of the ninety-day removal period for certain criminal aliens–*i.e.*, aliens ordered removed due to conviction of an enumerated crime (like petitioner here), or who have been determined to be "a risk to the community or unlikely to comply with the order of removal …."  INA § 241(a)(6).[3]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process.  The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's

---

[3]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country willing to accept the alien." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on May 9, 2012, upon his release from state custody. *See* Item 4-2, pp. 25-26. As a criminal alien under a final order of removal based upon convictions of an aggravated felony and crimes involving moral turpitude, petitioner's detention was mandatory for the ninety-day removal

period pursuant to INA § 241(a)(2), and thereafter, under INA § 241(a)(6) for "a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699.

Under *Zadvydas*, the first six months of detention following a final removal order are "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. Once the six-month period has passed, the burden shifts to the alien detainee to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Only if the alien makes this showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut" the alien's showing that there is no significant likelihood that he or she will be deported in the reasonably foreseeable future. *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foresee ability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights.").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*. The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to Nigeria in the reasonably foreseeable future. He simply alleges that the Consulate "has not issued any travel documents and there is no certainty as to when, if ever, such papers will be issued." Item 1, ¶ 11. However, as discussed above, the request for a travel document for petitioner remains pending with the Consulate, and there is nothing in the record to indicate that Nigerian authorities are inclined to deny the request upon resolution of petitioner's habeas and *coram nobis* litigation in the federal courts.

Furthermore, DHS records reflect that immediately upon the commencement of petitioner's post-final-removal order detention in May 2012, prompt steps were taken to secure the travel document, and follow-up contact with representatives of the Consulate was attempted or made on a regular basis between June and December 2012. *See* Item 4-1, ¶ 20.

In addition, the available statistical evidence reveals that in recent years, DHS has successfully repatriated significant numbers of aliens to Nigeria, indicating no institutional barriers to petitioner's removal. For example, DHS reports show that in fiscal year ("FY") 2009, a total of 425 aliens were repatriated to Nigeria; in FY 2010, 370 aliens were repatriated to Nigeria; and in FY 2011, 357 aliens were repatriated to Nigeria. *See* DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2011-3. These circumstances provide a reasonable basis for DHS's expectation that the verification required for the issuance of a travel document by the Nigerian government can be accomplished within the reasonably foreseeable future following resolution of petitioner's pending federal court litigation, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to Nigeria.

Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish compliance with the requirements of the DHS regulations described above. Instead, petitioner relies solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*. *See* Item 1, ¶¶ 13, 26, 34. However, several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere

passage of time, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*. *See, e.g., Khaleque v. Department of Homeland Sec.*, 2009 WL 81318, at *4 (W.D.N.Y. Jan. 9, 2009) (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof.); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant

likelihood of removal in the reasonably foreseeable future," *Zadvydas*, 533 U.S. at 701, and that petitioner may not rely on the delay resulting from his requests for federal habeas corpus and *coram nobis* relief to claim that his prolonged detention violates substantive due process. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: May 8, 2013
p:\pending\2012\12-1171.2241.may1.2013